# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7326 | **DATE** | **SEP 23 2002** |
| **CASE TITLE** | *United States of America ex rel. Kenneth Hawthorne vs. Roger D. Cowan* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The court denies petitioner's petition for a writ of habeas corpus. This case is dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | **SEP 24 2002** | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| CW | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* KENNETH HAWTHORNE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Case No:  00 C 7326** |
| | ) | |
| **ROGER D. COWAN** | ) | **Judge James H. Alesia** |
| | ) | |
| Respondent. | ) | |

**DOCKETED**

SEP 2 4 2002

## MEMORANDUM OPINION AND ORDER

Before the court is petitioner Kenneth Hawthorne's petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. For the following reasons, the court denies Hawthorne's petition.

## I. BACKGROUND

On May 10, 1995, a jury in the Circuit Court of Lake County, Illinois convicted petitioner

Kenneth Hawthorne ("Hawthorne") of aggravated criminal sexual assault. As a result, he was

sentenced to fifty-five years imprisonment. Hawthorne has filed this petition for habeas corpus,

claiming that his constitutional rights were violated during his trial and on direct appeal of his

conviction.

Hawthorne appealed his conviction to the Illinois Appellate Court for the Second District.

Hawthorne's appellate brief raised two arguments:  (1) the trial court erred in admitting

Hawthorne's prior convictions for impeachment purposes and (2) his trial counsel was

ineffective.  In an unpublished order dated October 23, 1997, the appellate court affirmed

Hawthorne's conviction.  Particularly, the appellate court held that: (1) the trial court had

conducted the proper analysis of Illinois evidence law in admitting Hawthorne's prior convictions and (2) Hawthorne's trial counsel was not ineffective, based on the Supreme Court's ruling in *Strickland v. Washington*, 446 U.S. 668 (1984). On October 6, 1998 the Illinois Supreme Court denied Hawthorne's petition for leave to appeal.

On February 17, 1998, pursuant to the Illinois Post-Conviction Hearing Act, 725 ILL. COMP. STAT. 5/122-1 *et seq.* (1995), Hawthorne filed his petition for post-conviction relief in the Circuit Court of Lake County. Claims relevant to the instant habeas petition that he raised in his state post-conviction petition include: (1) the state presented improper evidence and made improper comments during opening and closing statements; (2) the trial judge made erroneous rulings; (3) his trial counsel was ineffective for failing to object to the state's evidence and impeach the state's witnesses; and (4) his appellate counsel was ineffective for not raising additional issues on direct appeal. In an order dated March 11, 1998, the circuit court dismissed Hawthorne's petition as "frivolous and patently without merit." (Resp't Ex. H at 5.)

Hawthorne appealed the circuit court's dismissal of his petition for post-conviction relief to the Illinois Appellate Court. The appellate court noted that Hawthorne should have raised his issues on direct appeal and, therefore, those issues ordinarily would be waived under Illinois law. (Resp't Ex. K at 4.) The court recognized, however, that the doctrine of waiver did not apply when the waiver arose from ineffective assistance of appellate counsel. Therefore, the appellate court addressed the merits of Hawthorne's claims in the context of his claim that he was denied effective assistance of appellate counsel. (*Id.* at 5.) Ultimately, the court determined that Hawthorne's allegations of constitutional deprivations were without merit and affirmed the

circuit court's decision. The Illinois Supreme Court then denied Hawthorne's petition for leave to appeal.[1]

On November 20, 2000, Hawthorne filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, he argues that: (1) he was denied effective assistance of trial counsel when his attorney failed to impeach prosecution witnesses and object to other prejudicial statements by the prosecution and its witnesses, in violation of the Sixth and Fourteenth Amendments; (2) he was denied a fair trial when the prosecution presented testimony that was irrelevant, inflammatory, and prejudicial, in violation of his Fourteenth Amendment right to due process; (3) the trial judge violated his Fourteenth Amendment due process rights by admitting improper evidence, sentencing Hawthorne to a longer term of imprisonment than the state offered as a plea bargain, and abusing his discretion in jury selection; (4) his guilt was not proven beyond a reasonable doubt, in violation of his Fourteenth Amendment right to due process; and (5) he did not receive effective assistance of appellate counsel, in violation of the Sixth and Fourteenth Amendments.

## II. DISCUSSION

### A.  Standard for Reviewing a Petition for Habeas Corpus

A petitioner seeking a writ of habeas corpus must establish that the state court proceeding:

---

[1]Hawthorne also filed a separate petition in Illinois court for relief from judgment. In that petition, Hawthorne raised a claim based upon the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, Hawthorne does not present his *Apprendi* claim in the instant habeas petition, and, therefore, the court need not consider that claim.

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Ellsworth v. Levenhagen*, 248 F.3d 634, 638 (7th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). A state court decision is "contrary to" Supreme Court precedent if the state court applies a rule that contradicts the law as set forth by the Supreme Court or if the state court addresses facts that are materially indistinguishable from a Supreme Court decision and reaches a result different from the Supreme Court. *Whitehead v. Cowan*, 263 F.3d 708, 716 (7th Cir. 2001) (citing *Williams*, 529 U.S. at 405). A state court decision is an "unreasonable application" of Supreme Court precedent when the state court identifies the proper governing precedent of the Supreme Court but unreasonably applies it to the facts or when the state court unreasonably extends Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that precedent to a context where it should apply. *Whitehead*, 263 F.3d at 716-17 (citing *Williams*, 529 U.S. at 407). With this standard in mind, the court will review Hawthorne's habeas petition.

Respondent argues that the court should deny Hawthorne's petition for habeas corpus for two reasons: (1) all of Hawthorne's claims, except for his ineffective assistance of trial counsel claim, were procedurally defaulted and (2) Hawthorne failed to show that his trial counsel was constitutionally defective. First, the court will determine which, if any, of Hawthorne's claims have been procedurally defaulted. Second, the court will address the merits of any of Hawthorne's claims that were not defaulted.

4

**B.     Procedural Default**

Respondent argues that the court need not address the merits of Hawthorne's claims –

with the exception of his ineffective assistance of trial counsel claim raised on direct appeal –

because those claims were procedurally defaulted in state proceedings. Therefore, the court must

determine whether any of Hawthorne's claims have been procedurally defaulted before it may

address the merits of those claims.

A federal district court may not grant a writ of habeas corpus unless the petitioner has

exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). Additionally, the petitioner must

not have procedurally defaulted his claims during the state law proceedings. *Chambers v.*

*McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). There are two different ways that a petitioner

can procedurally default a claim. These are: (1) failing to raise a claim in the state court system

and (2) presenting a claim to the state court system and having it rejected on an independent and

adequate state ground. *United States ex rel. Brunt v. Cowan*, No. 00 C 5772, 2001 WL 521837,

at *1 (N.D. Ill. May 16, 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)).

In this case, respondent does not dispute that Hawthorne has exhausted his state court

remedies. However, respondent argues that Hawthorne has procedurally defaulted all but one

of his claims. First, the court will determine whether Hawthorne raised his claims in the Illinois

courts. Second, the court will decide whether any Illinois court disposed of one of Hawthorne's

claims upon an independent and adequate state ground.

## 1.    <u>Failure to raise a claim</u>

A habeas petitioner must fully and fairly present his federal claims to the state courts before seeking federal review. *Chambers*, 264 F.3d at 732. This means that a petitioner must invoke one complete round of a state's established appellate review process before seeking habeas relief on a claim. *Cossel v. Miller*, 229 F.3d 649, 653 (7th Cir. 2000) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). Therefore, the court must determine what issues Hawthorne raised either on direct appeal or in his state petition for post-conviction relief and appealed to the Illinois Supreme Court. *See United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001) (considering claims petitioner raised on direct appeal and state collateral review in determining which claims petitioner had properly presented to the state courts).

Hawthorne raised only two claims on direct appeal: (1) the trial court erred in admitting Hawthorne's prior convictions for impeachment purposes and (2) his trial counsel was ineffective for failing to object to prosecution comments and for failing to impeach prosecution witnesses.[2] He included both claims in his request for appeal to the Illinois Supreme Court. However, Hawthorne raised additional claims in his state petition for post-conviction relief, including some of the claims presented in the instant petition. The Illinois law doctrine of waiver ordinarily would have prevented courts reviewing Hawthorne's petition from considering claims that he had not raised on direct appeal. However, the Illinois Appellate Court noted that waiver did not apply when the petitioner asserted a claim of ineffective assistance of appellate counsel, and addressed the merits of Hawthorne's claims. (Resp't Ex. K at 5.)

---

[2]Hawthorne did not renew his challenge to the trial court's admission of Hawthorne's prior convictions in his petition for post-conviction relief, and he does not pursue that claim here.

Hawthorne then filed a petition for leave to appeal to the Illinois Supreme Court, and included his claims that (1) the prosecution presented improper evidence and made improper comments; (2) the trial judge made improper rulings at trial and at sentencing; (3) his trial counsel was ineffective; and (4) his appellate counsel was ineffective. However, Hawthorne raised no claim regarding jury selection in his petition for leave to appeal. Hawthorne did not assert – either on direct appeal or in his state post-conviction relief petition – that his Fourteenth Amendment due process rights were violated because his guilt was not proven beyond a reasonable doubt. Additionally, Hawthorne failed to present his claim regarding jury selection to the Illinois Supreme Court and, therefore, failed to invoke one complete round of review of that claim. Therefore, the court finds that Hawthorne has procedurally defaulted these two claims and need not address their merits.[3]

## 2. Independent and Adequate State Ground

Respondent argues that all of Hawthorne's claims that he raised in his state post-conviction petition were defaulted because the Illinois Appellate Court disposed of those claims using an independent and adequate state ground.

A federal court will not review a question of federal law decided by a state court if that decision rests on state law grounds that are independent of the federal question and adequate to support the judgment. *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 556 (7th Cir. 2001).

---

[3]In order to demonstrate that his procedural default of this claim should be excused, Hawthorne would need to establish that either (1) there is good cause for the default and actual prejudice therefrom or (2) default would lead to a "fundamental miscarriage of justice." *Bouseley v. United States*, 523 U.S. 614, 622-24 (1998); *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996). Hawthorne has asserted no such argument to excuse his procedural default.

A state law ground that provides the basis for a state court decision is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case. *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 261 (1989)). A state law ground is adequate when it is firmly established and regularly followed state practice at the time it is applied. *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999).

The Illinois Appellate Court, when reviewing the circuit court's order dismissing Hawthorne's petition for post-conviction relief, addressed the merits of a number of the issues that Hawthorne had presented. The issues that the appellate court addressed on the merits included: (1) ineffective assistance of trial counsel; (2) the prosecution's introduction of improper evidence; (3) the trial judge's rulings; and (4) ineffective assistance of appellate counsel. In its closing paragraph, the appellate court held that Hawthorne had waived any claims that the court had not addressed on the merits, pursuant to Illinois Supreme Court Rule 341(e)(7), 177 Ill. 2d R. 341(e)(7) ("Rule 341"). (Resp't Ex. K at 12.) Because none of Hawthorne's claims that he asserts in his habeas petition were among those deemed waived under Rule 341, the court finds that no claim relevant to this petition was disposed of by the state courts under an independent and adequate state ground.

Having determined that Hawthorne procedurally defaulted only his claims that his guilt was not proven beyond a reasonable doubt and that the trial judge made erroneous rulings during jury selection, the court will now review the merits of Hawthorne's remaining claims: (1) the prosecution presented improper evidence and made improper comments; (2) the trial judge made

improper rulings at trial and at sentencing; (3) his trial counsel was ineffective; and (4) his appellate counsel was ineffective.

## C.   Prosecutorial Misconduct

Hawthorne points to three actions by the prosecution that he argues constituted prosecutorial misconduct. Particularly, Hawthorne claims that the prosecution: (1) unfairly asked the jury favor Heffernan because of her multiple sclerosis; (2) improperly commented on Heffernan's physical condition during closing argument; and (3) presented irrelevant and inflammatory testimony.[4]   Respondent does not respond to Hawthorne's prosecutorial misconduct arguments.

District courts analyze claims of prosecutorial misconduct under the two-prong test articulated by the Supreme Court in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Whitehead v. Cowan*, 263 F.3d 708, 728 (7th Cir. 2001). Under that test, a court first looks at the actions in isolation and determines whether they were proper. *Id.* Second, if the court finds the actions to be improper, it examines them in the context of the whole record to determine whether the defendant was denied a fair trial. *Id.* To determine whether the defendant was deprived of a fair trial, the court must consider six factors: (1) whether the prosecutor misstated the evidence; (2) whether the remarks implicate specific rights of the accused; (3) whether the defense invited the

---

[4]Hawthorne argues also that the prosecution violated his constitutional rights when it elicited hearsay testimony from the medical personnel who examined Heffernan in the emergency room. However, the trial judge ruled before trial that the potentially hearsay testimony fell within the hearsay exception for statements made in connection with medical treatment. Hawthorne provides no caselaw – nor did the court's own research reveal any – to support a claim that a prosecutor violates a defendant's due process rights by submitting evidence that the trial judge deems admissible. Therefore, the court need not address Hawthorne's arguments on this point.

response; (4) the trial court's instructions; (5) the weight of evidence against the defendant; and (6) the defendant's opportunity to rebut. *Id.* The most important of these factors is the weight of the evidence against the defendant, because strong evidence of guilt eliminates any doubt that the prosecution's remarks deprived the defendant of a fair trial. *Id.* at 729. First, the court will review each of Hawthorne's arguments in turn in order to determine whether the prosecution's actions were proper. Second, if the actions were improper, the court will review whether those actions deprived Hawthorne of a fair trial.

### 1.    **Improper actions**

First, the court reviews the propriety of the prosecution's comment during its opening statement that the jury should take consideration of Heffernan because of her multiple sclerosis. After reading the prosecution's comment in context, the court notes that the prosecution was merely alerting the jury to the fact that Heffernan's multiple sclerosis caused her to speak more slowly. (R. at 166.) The prosecution was not asking the jury to favor Heffernan or to ascribe additional credibility to her testimony, merely because of her disability. Therefore, the court cannot conclude that the prosecution's comment was improper.

Second, the court considers the propriety of the prosecution's presentation of evidence regarding Heffernan's physical condition. Whether Hawthorne acted with force in engaging in intercourse with Heffernan was an element of the charge against him and, therefore, was a central issue of the case. The evidence presented by both sides at trial indicates that the relative physical characteristics of Heffernan and Hawthorne – particularly Heffernan's age and disability – was relevant to a determination of whether Hawthorne used force. Accordingly, the court finds

that the evidence was relevant and not unduly prejudicial. Therefore, the court concludes that the prosecution presenting such evidence was not improper.

Third, the court turns to the propriety of the prosecution's comments during closing argument regarding Heffernan's physical condition. The court notes that a prosecutor is allowed wide latitude to comment on the evidence during his closing argument. *Brunt*, 2001 WL 521837, at *5. The comments in question pertain to Heffernan's physical condition, which was relevant to whether Hawthorne used force – a central issue at trial. Hawthorne provides no authority – nor does the court's own research reveal any – to support his argument that these arguments are improper. There was ample evidence of Heffernan's physical condition during trial and the court cannot conclude that commenting on such evidence was improper. Consequently, the court concludes that none of these actions were improper and, therefore finds that Hawthorne's due process rights were not violated by these actions.

## 2. **Deprived of a fair trial**

Even if the court concluded that any of these three actions by the prosecution were improper, the court would have to apply the six *Darden* factors in order to determine whether the comment deprived Hawthorne of a fair trial. First, the court notes that the prosecution did not misstate any of the evidence during its opening statement or closing argument – the evidence of Heffernan's physical condition was relevant to the case and the prosecution's comments were consistent with that evidence, particularly Heffernan's appearance in the courtroom. Second, the comment did not implicate any of Hawthorne's specific rights. Third, the trial judge instructed the jury that sympathy should not be a consideration in their deliberations and that

opening and closing statements did not constitute evidence. Fourth, the defense had an opportunity to rebut these statements and evidence. Fifth, the defense did not invite these comments or evidence by the prosecution. Sixth and most importantly, the court finds that there was substantial evidence to support Hawthorne's conviction. The mere fact that the defense did not invite the comments or evidence is insufficient to outweigh the other five *Darden* factors. Therefore, the court finds that these actions did not deprive Hawthorne of a fair trial. Accordingly, the court concludes that the prosecution did not violate Hawthorne's Fourteenth Amendment due process rights by (1) making comments during opening and closing statements; and (2) introducing evidence of Heffernan's physical condition.

## D.   Trial Judge

Hawthorne claims that the trial judge, Judge Charles F. Scott ("Judge Scott"), violated Hawthorne's Fourteenth Amendment rights to due process and equal protection by: (1) making improper rulings during jury selection; (2) making erroneous evidentiary rulings and (3) improperly increasing Hawthorne's sentence. Respondent does not respond to Hawthorne's arguments regarding Judge Scott.

### 1.   Jury Selection

For reasons explained *supra* Sect. II.B.1., the court has found that Hawthorne procedurally defaulted his claims regarding jury selection. However, even if he had not defaulted these claims, they would fail, for reasons explained below. Hawthorne argues that Judge Scott improperly failed to dismiss two jurors who, Hawthorne claims, were biased in favor

of Heffernan's age and color. Hawthorne identifies those two jurors as Mr. Wilkin ("Wilkin") and Ms. Morris ("Morris").[5]

The Sixth and Fourteenth Amendments guarantee an impartial jury to criminal defendants. *United States ex rel. Wilson v. Schomig*, No. 00 C 1861, 2002 WL 548729, at *7 (N.D. Ill. Apr. 8, 2002) (citing *Morgan v. Illinois*, 504 U.S. 719, 727 (1992)). "Due process of law requires 'a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.'" *Porter v. Gramley*, 112 F.3d 1308, 1316 (7th Cir. 1997) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1983)). The trial court's determination of juror bias is a factual matter that is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *Pitsonbarger v. Gramley*, 141 F.3d 728, 734 (7th Cir. 1998).

Hawthorne has submitted no evidence that either Wilkin or Morris harbored a gender or age bias in favor of Heffernan. Therefore, the court will look to the trial record in order to see if any such evidence exists. When questioning both Wilkin and Morris, Judge Scott asked, "The alleged victim in this case is an 81-year-old Caucasian woman. Would you be able to consider testimony relating to that and continue to be fair and impartial to both sides?" (R. at 144, 146.) Morris and Wilkin each responded, "I think so." (*Id.*) Additionally, Judge Scott asked Wilkin,

---

[5]In his reply brief, Hawthorne argues that the trial court committed additional constitutional errors regarding jury selection. Because Hawthorne did not include those claims in his petition and raises them for the first time in his reply, the court need not address those arguments. *See United States ex rel. Kelly v. Boyd*, No. 99 C 7455, 2002 WL 314595, at *4 n.2 (N.D. Ill. Feb. 28, 2002) (disregarding issues raised by petitioner in his reply brief, but not in his original petition). Additionally, Hawthorne refers to the juror identified in the transcript as Wilkin "Wilkins." The court will use the spelling from the trial record.

"Now, is there anything in your thoughts that would make it difficult for you to be fair and impartial to the State and to the defendant?" (R. at 144.) Wilkin responded, "No." (*Id.*) Likewise, Judge Scott asked Morris, "Is there anything you have heard or seen so far in this courtroom or anything about this case that would make it difficult for you to be fair and impartial to both sides?" (R. at 146.) Morris replied, "No." (R. at 147.) The relevant portions of the trial record provide no indication that either Morris or Wilkin harbor the age and gender bias that Hawthorne alleges. Therefore, the court finds that Hawthorne's Sixth and Fourteenth Amendment rights were not violated by the trial court during jury selection.

## 2. Evidentiary rulings

Hawthorne argues that Judge Scott violated his due process and equal protection rights when he made certain improper evidentiary rulings. Particularly, Hawthorne argues that Judge Scott's admission of the testimony of Michale Fisher ("Fisher"), the nurse who examined Heffernan in the emergency room, and Douglas Flowers ("Flowers"), another of the prosecution's witnesses, was improper. The court will address the testimony of each witness separately.

### a. Fisher's testimony

Hawthorne argues that Judge Scott should have barred Fisher's testimony on hearsay grounds. Defense counsel moved *in limine* to bar Fisher's testimony as inadmissible hearsay evidence.[6] Judge Scott heard argument from both the defense and prosecution on the issue and

---

[6]Hawthorne's attorney also moved *in limine* to bar the testimony of Dr. Giacinto ("Giacinto"), the physician who examined Heffernan in the emergency room. However, Hawthorne does not argue in his petition that Judge Scott's admission of Giacinto's testimony
(continued...)

14

decided that the testimony fell under the hearsay exception for statements made in connection with medical treatment. (R. at 47.) Judge Scott reasoned that Heffernan had a right to tell the medical personnel who were treating her the cause of her symptoms, pain, or sensations and that such a description would include the fact that she was raped, as well as the time and place. (*Id.*)

When a district court reviews a habeas petitioner's claim regarding a state court's evidentiary ruling based on a state rule of evidence, the habeas court does not review the correctness of that determination based upon the state's evidence laws. *Koo v. McBride*, 124 F.3d 869, 874 (7th Cir. 1997). Instead, the habeas court must determine whether the petitioner established that the evidentiary ruling violated due process by denying him a fair trial. *Id.* The mere violation of a state rule of evidence by the trial court does not amount to a denial of due process. *Id.* The Seventh Circuit has noted that it is hard for a habeas petitioner to show that his due process rights were violated by the trial court failing to limit the prosecution's evidence. According to the court of appeals, such an appeal will almost always fail because, "[i]f the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission." *Watkins v. Meloy*, 95 F.3d 4, 7 (7th Cir. 1996).

In this case, there was substantial evidence – including the testimony of Heffernan and Flowers, as well as the clearly admissible portions of the testimony by the medical personnel –

---

[6](...continued)
violated his due process rights. Therefore, the court need not address that claim. *See Kelly*, 2002 WL 314595, at *4 n.2 (considering only claims that the petitioner raised in his petition). Nevertheless, even if Hawthorne asserted a claim that Judge Scott violated Hawthorne's due process rights when he admitted Giacinto's testimony, that claim would fail for the same reasons that his claim regarding Fisher's testimony fails.

to support the jury's decision to convict Hawthorne of aggravated criminal sexual assault. Therefore, the court cannot conclude that, even without any elements of Fisher's testimony that could have been improper, there is a reasonable probability that the result of Hawthorne's trial would have been different. *See Reddick v. Haws*, 120 F.3d 714, 717 (7th Cir. 1997) (holding that habeas petitioner's due process rights were not violated by potentially improper hearsay testimony when there was still substantial proof of the petitioner's guilt independent of the questionable evidence). Consequently, the court finds that Hawthorne's due process rights were not violated by Judge Scott's admission of Fisher's testimony.

**b.    Flowers's testimony**

Hawthorne argues that Judge Scott's admission of Flowers's testimony violated his due process rights when: (1) Flowers's testimony differed from the testimony that the prosecution and Judge Scott agreed would be presented and (2) Flowers testified to Heffernan's physical condition and demeanor. The court will address each of Hawthorne's arguments in turn.

First, Hawthorne points out the pre-trial agreement between the prosecution and Judge Scott that Flowers would testify that he went to Heffernan's apartment looking for Hawthorne, after finding his own apartment in disarray. Instead, at trial, Flowers testified that he went to Heffernan's apartment to have something to eat and to tell her what happened to his apartment. Because the court is reviewing an evidentiary determination by the trial court, it must once again determine whether the admission of this evidence violated Hawthorne's due process rights. *Koo*, 124 F.3d at 874. The trial record indicates that Judge Scott restricted Flowers's testimony regarding his reasons for going to Heffernan's apartment in order to prevent Flowers from

testifying that Hawthorne had just been released from prison. (R. at 53.) Flowers did not testify regarding Hawthorne's criminal history at trial, and therefore Flowers's testimony did not include the facts that Judge Scott barred from evidence. Additionally, regardless of Flowers's testimony regarding his reason for going to Heffernan's apartment, the trial record demonstrates that there was substantial proof of Hawthorne's guilt. Therefore, the court finds that there is no reasonable probability that Hawthorne would have been acquitted, had Flowers's testimony conformed to the agreement between the prosecution and Judge Scott. Accordingly, the court concludes that Judge Scott's decision to admit Flowers's testimony regarding his reason for going to Heffernan's apartment did not violate Hawthorne's due process rights.

Second, Hawthorne argues that Judge Scott's admission of Flowers's testimony regarding Heffernan's physical condition was irrelevant and unduly prejudicial. The court has already stated *supra* Sect. II.C.1., that evidence of Heffernan's physical condition was relevant to the issue of force, which was an element of the charge against Hawthorne. Additionally, even if Flowers had not been permitted to testify regarding Heffernan's physical condition, the jurors could have observed Heffernan's frailty for themselves, and they would have heard her own testimony regarding her multiple sclerosis. Therefore, even if Judge Scott had barred Flowers from testifying to Heffernan's physical condition, there would be no reasonable probability that Hawthorne would have been acquitted. Consequently, the court cannot conclude that Flowers's testimony regarding Heffernan's physical condition violated Hawthorne's Fourteenth Amendment due process rights.

### 3.    Sentencing

#### a.    Sentencing after a sentencing conference

Hawthorne argues that his constitutional rights were violated when Judge Scott sentenced him to a greater term of imprisonment than had been discussed at a sentencing conference. He appears to be arguing that Judge Scott punished him for rejecting the prosecution's offer and exercising his right to trial.

A trial court violates a criminal defendant's due process rights when it punishes that defendant for exercising some other constitutional right. *United States v. Warda*, 285 F.3d 573, 580 (7th Cir. 2002) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). A reviewing court may presume vindictiveness on the part of the trial court only when the circumstances surrounding the sentencing give rise to a reasonable likelihood that the increase in sentence is the product of actual vindictiveness. *Warda*, 285 F.3d at 580 (citing *Alabama v. Smith*, 490 U.S. 794, 799 (1989)). If the circumstances give rise to a presumption of vindictiveness, the reviewing court must look to the sentencing court's articulated reasons for imposing the increased sentence. *Warda*, 285 F.3d at 581. However, the mere imposition of a lengthier sentence does not necessarily establish a presumption of vindictiveness. *Id.* at 580.

Prior to trial, Judge Scott met with Hawthorne's attorney and the prosecution to discuss a possible plea agreement for Hawthorne. The prosecution indicated that it would be willing to agree on a thirty-five year sentence, in exchange for Hawthorne pleading guilty. Judge Scott informed Hawthorne that, if he were convicted, he would face a sentence of between six and sixty years imprisonment due to his criminal record and Heffernan's age and physical condition.

18

Hawthorne stated that he had discussed the prosecution's offer with his attorney and that he understood the factors that would affect his sentencing. (R. at 41.) Nevertheless, Hawthorne exercised his right to trial. After Hawthorne was convicted, Judge Scott sentenced Hawthorne to fifty-five years imprisonment.

Hawthorne provides the court with no evidence, other than the fact that he received a greater sentence than the prosecution offered, to support a presumption of vindictiveness in this case. Even assuming, arguendo, that Hawthorne could establish a presumption of vindictiveness, the court finds that Judge Scott articulated reasons in support of the sentence that are sufficient to rebut that presumption. First, Judge Scott reviewed the relevant mitigating factors but found that none applied to Hawthorne's case. Second, Judge Scott reviewed the statutory list of aggravating factors and found that Hawthorne had a history of violent criminal activity and that he had not shown remorse. Additionally, Judge Scott found that Hawthorne qualified for an extended term under 730 ILL. COMP. STAT. 5/5-3.2(b)(4)(iii) (1995), because the offense was committed against a physically handicapped victim. The fifty-five year sentence fell within the statutory limitations for a Class X felony involving aggravating factors. 730 ILL. COMP. STAT. 5/5-8-2(a)(2) (1995). Therefore, Hawthorne cannot prove that the court acted vindictively against him during sentencing. Accordingly, the court concludes that Hawthorne's constitutional rights were not violated when Judge Scott sentenced him to a greater term than was offered in a plea agreement by the prosecution.

19

### b. Factors considered by the trial court

Hawthorne argues that his Fourteenth Amendment rights to due process and equal protection were violated when Judge Scott considered Heffernan's age and physical condition during sentencing. Hawthorne appears to be arguing that Judge Scott improperly considered elements of the crime as aggravating factors in determining his sentence. First, the court will review Judge Scott's instruction to the jury regarding Heffernan's age. Second, the court will review Judge Scott's consideration of Heffernan's disability as an aggravating factor.

First, under Illinois law, an accused commits aggravated criminal sexual assault if he commits criminal sexual assault and any one of a list of additional circumstances applies. 720 ILL. COMP. STAT. 5/12-14 (1995). That list of additional circumstances includes: (1) a victim sixty years of age or older and (2) a physically handicapped victim. 720 ILL. COMP. STAT. 5/12-14(5), (6) (1995). At Hawthorne's trial, Judge Scott correctly instructed the jury that the victim being at least sixty years old was an element of aggravated criminal sexual assault. Because aggravated criminal sexual assault required the existence of only one of that list of circumstances, the court cannot conclude that consideration of Heffernan's age as an element of the charge against Hawthorne was improper.

Second, during the sentencing hearing, Judge Scott reviewed a series of aggravating factors. Under Illinois law, the list of aggravating factors relevant at sentencing included: (1) a sixty-year-old victim and (2) a physically handicapped victim. 720 ILL. COMP. STAT. 5/5-5-3.2 (1995). During sentencing, Judge Scott stated, "As to the extended term, I find under the statute ... that he qualifies for extended term because the offense was committed by the defendant

against a person physically handicapped at the time of the offense." (R. at 491.) Judge Scott made no reference to Heffernan's age as an aggravating factor. Therefore, the court finds that Judge Scott appropriately considered Heffernan's physical disability, but not her age, as a relevant factor in determining whether Hawthorne was eligible for an extended term sentence.

Therefore, the court finds that Judge Scott considering Heffernan's age as an element of the offense and her physical disability as an aggravating factor at sentencing was not improper. Consequently, the court concludes that Judge Scott instructing the jury as to Heffernan's age and considering Heffernan's disability at sentencing did not violate Hawthorne's Fourteenth Amendment due process rights.

## F. **Ineffective Assistance of Trial Counsel**

Hawthorne argues that his trial counsel, Assistant Public Defender Dwayne Douglas ("Douglas"), was ineffective because he: (1) failed to impeach prosecution witnesses and (2) failed to object to inflammatory and prejudicial questions by the prosecution.[7] Respondent argues that Douglas's performance was not ineffective because the alleged inconsistencies in the testimony of the prosecution witnesses involved minor and collateral matters, and therefore, there was not a reasonable probability that the outcome of the trial would have been different had those issues been raised. The respondent does not address Hawthorne's argument regarding Douglas's failure to object.

---

[7]Douglas represented Hawthorne at trial. However, Douglas withdrew during the post-trial proceedings and Hawthorne was represented by other counsel on post-trial motions and during sentencing. Hawthorne's ineffective assistance of counsel claim pertains only to Douglas's representation.

In order to establish ineffective assistance of counsel, a habeas petitioner must prove both components of the two-part test articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). First, the petitioner must prove that "his counsel's performance fell below an objective standard of reasonableness." *Id.* Determining whether counsel performed reasonably is a deferential inquiry. *Dixon v. Snyder*, 266 F.3d 693, 701 (7th Cir. 2001). A habeas petitioner must overcome the presumption that the challenged action by his counsel might be considered sound trial strategy. *Id.* (citing *Strickland*, 466 U.S. at 689). Under the second prong of the *Strickland* analysis, the petitioner must prove that he was prejudiced by his counsel's deficient performance. *Hough*, 272 F.3d at 891. The petitioner was prejudiced when there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Id.* The court will apply the *Strickland* analysis to each of Hawthorne's arguments.

## 1.    __Failure to impeach__

Hawthorne raised this claim on direct appeal and the Illinois Appellate Court held that Douglas's decisions on cross-examination were "purely a matter of trial strategy." (Resp't Ex. D at 4.) Because Heffernan's testimony that she had been forced to have intercourse with Hawthorne was consistent, the court found no reasonable probability that Hawthorne would have been acquitted. (*Id.*) First, the court will review Douglas's treatment of Heffernan. Second, the court will review Douglas's cross-examination of Giacanto, the physician who examined Heffernan in the emergency room.

### a. Heffernan

Hawthorne argues that Douglas failed to impeach Heffernan and call attention to inconsistencies in her testimony. The court notes initially that many of the inconsistencies that Hawthorne points out are not necessarily inconsistent and that many others involve only collateral issues in this case.

First, as to whether Douglas's failure to impeach Heffernan fell below an objective standard of reasonableness, Douglas did, in fact, conduct cross-examination of Heffernan and emphasized those parts of her testimony that supported a conclusion that Hawthorne had not acted with force. Merely because Douglas did not exploit minor inconsistencies in Heffernan's testimony does not mean that his performance was objectively unreasonable. Instead, the court finds that it was a reasonable decision of trial strategy for Douglas to avoid over aggressively cross examining a victim in order to avoid appearing belligerent and unsympathetic before the jury. *See United States ex rel. Lancaster v. Welborn*, No. 99 C 7749, 2001 WL 1387014, at *3 (N.D. Ill. Nov. 2, 2001) (refusing to second guess trial counsel's strategy to "treat the victim's parents with kid gloves."). Regardless of whether the decision not to impeach Heffernan with these statements was reasonable, Hawthorne has failed to show a reasonable probability that he would have been acquitted, had Douglas impeached Heffernan more aggressively. Therefore, the court concludes that Douglas's treatment of Heffernan did not render his performance so ineffective so as to violate Hawthorne's Sixth and Fourteenth Amendment rights.

### b. Giacanto

Hawthorne argues that Douglas was ineffective because he failed to impeach Giacanto. Again, Hawthorne points to statements from Giacanto's testimony that he contends are inconsistent. Hawthorne contends that Douglas allowing the prosecution to present Giacanto's testimony violated Hawthorne's Sixth and Fourteenth Amendment rights.

Douglas cross-examined Giacanto and, as with his cross-examination of Heffernan, focused upon the issue of force. In a case such as this, it was a reasonable strategic decision for Douglas to avoid being unnecessarily intrusive, in order to appear compassionate before the jury. Therefore, the court cannot conclude that Hawthorne's trial counsel's performance was objectively unreasonable by virtue of him not impeaching Giacanto with the statements that Hawthorne lists. Additionally, because the statements that Hawthorne emphasizes in his brief were not relevant to the issue of force, the court finds that he has failed to prove a reasonable probability that he would have been acquitted, had Douglas called attention to those statements. Therefore, the court concludes that Douglas's performance with regard to impeaching Giacanto was not so deficient as to violate Hawthorne's Sixth and Fourteenth Amendment rights.

### 2. Failure to object

Hawthorne claims that Douglas was ineffective by failing to object to evidence and comments by the prosecution that were unduly prejudicial to Hawthorne. Particularly, Hawthorne points to (1) comments by the prosecution during opening statements and closing argument; (2) Flowers's testimony regarding Heffernan's physical condition; and (3) Heffernan's testimony regarding her family and her multiple sclerosis.

24

The court has already determined, *supra* Sect. II.C.1., that the prosecution's comments during opening and closing were not improper, and *supra* Sects. II.C.1. and II.D.2., that Flowers's testimony regarding Heffernan's physical condition was not improper. Furthermore, Heffernan herself took the stand and testified regarding her disability. Additionally, even if Douglas had succeeded in having Heffernan's testimony regarding her family and her multiple sclerosis excluded, all of the other evidence that proved Hawthorne was guilty of aggravated criminal sexual assault would still have been before the jury. Also, as the court has already noted, the trial judge instructed the jurors that they should not be influenced by sympathy or prejudice in deciding the case. (R. at 377.) Therefore, Hawthorne has failed to show a reasonable probability that he would have been acquitted, had Douglas objected to those statements. *See Stone v. Farley*, 86 F.3d 712, 716-17 (7th Cir. 1996) (noting that a habeas court need not conduct the full two-step *Strickland* analysis, and that the court may begin with the second step and determine only whether counsel's alleged misconduct caused the petitioner to be wrongfully convicted). Therefore, the court finds that Douglas's failure to object to the prosecution's comments and the testimony of Flowers and Heffernan did not violate Hawthorne's Sixth and Fourteenth Amendment rights.

### 3.  <u>Closing argument</u>

Hawthorne argues that a particular statement from Douglas's closing argument prejudiced him. During closing, Douglas stated: "Now the state has gone at great length and spent a great deal of time telling you about Helen Heffernan's age, but she must be old; otherwise, Mr. Hawthorne is not guilty of this crime." (R. at 370.) Having read this statement in the context

25

of the rest of counsel's argument, the court notes that Douglas was not seeking to evoke sympathy for Heffernan, as Hawthorne seems to argue. Instead, this statement was a reasonable effort by Douglas to de-emphasize Heffernan's sympathetic characteristics and focus the jury's attention upon whether Hawthorne acted with force, which was the disputed element of the crime. Therefore, the court concludes that Douglas's statement was a reasonable act of trial strategy and that the statement did not render his performance unreasonable. Furthermore, even if Douglas did not make the comment regarding Heffernan's age, there was still ample, undisputed evidence in the record that Heffernan was over sixty years old at the time of the crime, as well as the substantial evidence that Hawthorne had acted with force. Therefore, Hawthorne has failed to show that he would have been acquitted, had his trial counsel not commented on Heffernan's age. Accordingly, the court concludes that Douglas's statement during his closing argument did not violate Hawthorne's Sixth and Fourteenth Amendment rights.

## G.     Ineffective Assistance of Appellate Counsel

Hawthorne argues that his counsel on direct appeal, Carol Anfinson ("Anfinson"), from the office of the State Appellate Public Defender, was ineffective for failing to raise additional issues on direct appeal. Hawthorne does not enumerate issues in his brief that he contends that his appellate counsel should have raised. He does, however, attach as exhibits to his petition two letters that he wrote to Anfinson, in which he listed points that he wanted her to include in his appellate brief. The court will determine whether Anfinson was ineffective in not raising these issues. *See United States ex rel. McMillen v. Briley*, No. 01 C 7119, 2002 WL 69488, at *5

(N.D. Ill. Jan. 18, 2002) (considering exhibits attached to habeas petition in determining whether to grant writ of habeas corpus).

The *Strickland* standard applies to Hawthorne's claim that he was denied effective assistance of counsel on direct appeal. When applying the *Strickland* test to appellate counsel's performance, a habeas court must first determine whether the counsel's performance was insufficient. *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000). An appellate attorney's performance is insufficient when he omits a significant and obvious issue without a legitimate strategic reason for doing so. *Id.* Second, the habeas court must determine whether the omitted issue may have resulted in a reversal of the conviction, or an order for a new trial. *Id.* (quotations omitted). The Seventh Circuit has noted, "one of the most important parts of appellate advocacy is the selection of the proper claims to urge on appeal." *Id.* at 791. As already explained *supra* Sect. II.E.2., a habeas court may conduct the *Strickland* analysis by beginning with the second step and simply determining whether the petitioner was prejudiced by his counsel's shortcomings. *Stone*, 86 F.3d at 715.

Hawthorne, in his letters to Anfinson, lists a series of points that he wanted her to include as she represented him on direct appeal, including two of the claims that he asserts in the instant habeas petition: (1) prosecutorial misconduct for making improper comments and presenting improper evidence and (2) ineffective assistance of trial counsel for failing to raise inconsistencies in the prosecution's case. The court has already held *supra* Sect. II.C. and II.E. that those claims fail. Therefore, the court concludes that Hawthorne cannot show that the

outcome of his case would have been different, had Anfinson raised those claims on direct appeal.

The only issue that Hawthorne raised in his letters to Anfinson that the court has not yet considered is whether it was improper for the state to collect a blood sample from Hawthorne. ("Pet'r Ex. 2.) However, Hawthorne provides no authority – nor does the court's own research reveal any – to support a conclusion that the state's blood testing procedures were improper. Therefore, the court cannot conclude that Anfinson acted unreliably in failing to raise this issue on appeal. Nevertheless, even if Anfinson had acted unreasonably in not raising this issue, the court cannot conclude that such an argument would have resulted in a reversal of plaintiff's conviction because of the substantial evidence in the record to support that conviction. Therefore, Hawthorne could not show that Anfinson's failure to raise this issue prejudiced him.

Because Hawthorne cannot establish that Anfinson's failure to raise these additional issues constituted ineffective assistance of counsel, under the *Strickland* standard, the court concludes that Anfinson's performance did not violate his Sixth and Fourteenth Amendment rights.

### III. CONCLUSION

For the foregoing reasons, the court denies Hawthorne's petition for habeas corpus.

Date: **SEP 2 3 2002**

James H. Alesia
United States District Judge28